## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| CALEB MCARTHUR, on behalf of himself and all others similarly situated,<br><br>                    Plaintiff,<br><br>          vs.<br><br>TANGOE, INC., JAMES D. FOY, GERALD D. KOKOS, DAVID COIT, GARY GOLDING, RONALD KAISER, JACKIE R. KIMZEY, RICHARD PONTIN, and NOAH WALLEY,<br><br>                    Defendants. | Case No.:<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

## CLASS ACTION COMPLAINT FOR BREACH OF FIDUCIARY DUTIES AND INDIVIDUAL CLAIMS FOR VIOLATION OF SECTIONS 14(d), 14(e), AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934

Plaintiff Caleb McArthur ("Plaintiff"), on behalf of himself and the proposed Class defined herein, brings this class action suit for violations of Sections 14(d), 14(e), and 20(a) of the Securities Exchange Act Of 1934. In support of this Class Action Complaint, Plaintiff, by his attorneys, alleges upon information and belief, except for her own acts, which are alleged on knowledge, as follows:

### INTRODUCTION

1.    Plaintiff brings this action on behalf of himself and the public stockholders of Tangoe, Inc. ("Tangoe" or the "Company") against the Company and Tangoe's Board of Directors (collectively, the "Board" or the "Individual Defendants," as further defined below) for violations of Section 14(d)(4), and Rule 14D-9 promulgated thereunder by the U.S. Securities and Exchange Commission (the "SEC"), and Sections 14(e), and 20(a). Tangoe and the Individual Defendants are referred to herein as "Defendants." Specifically, Defendants solicit the tendering of stockholder shares in connection with the sale of the Company to Marlin Equity Partners

("Marlin"), through a recommendation statement that omits material facts necessary to make the statements therein not false or misleading. Stockholders require this material information to decide whether to tender their shares.

2.      On April 28, 2017, the Company announced that it had entered into an agreement and plan of merger (the "Merger Agreement"), by which Marlin would commence a tender offer (the "Tender Offer") to acquire all of the outstanding shares of Tangoe's common stock at a purchase price of $6.50 per share in cash (the "Proposed Transaction"). At closing, Marlin intends to combine Tangoe with its existing portfolio company Asentinel. The Tender Offer is set to expire on June 13, 2017.

3.      In connection with the commencement of the Tender Offer, on May 12, 2017, the Company filed a Recommendation Statement on Schedule 14D-9 (the "Recommendation Statement") with the SEC. The Recommendation Statement is materially deficient and misleading because, inter alia, it fails to disclose material information about the financial projections prepared by the Company and relied upon by the Company's financial advisor, and the potential conflicts of interest faced by Company executives. Without all material information, Tangoe's stockholders cannot make an informed decision to exchange their shares in the Tender Offer. The failure to adequately disclose such material information constitutes a violation of §§ 14(d)(4), 14(e), and 20(a) of the Exchange Act, as stockholders need such information in order to make a fully-informed decision regarding tendering their shares in connection with the Tender Offer about whether to tender their shares.

4.      For these reasons and as set forth in detail herein, the Individual Defendants have violated federal securities laws. Accordingly, Plaintiff seeks to enjoin the Proposed Transaction or, in the event the Proposed Transaction is consummated, recover damages resulting from the

Individual Defendants' violations of these laws.  Judicial intervention is warranted here to rectify existing and future irreparable harm to the Company's stockholders.

## JURISDICTION AND VENUE

5.     The claims asserted herein arise under §§ 14(d), 14(e), and 20(a) of the Exchange Act, 15 U.S.C. § 78aa.  The Court has subject matter jurisdiction pursuant to § 27 of the Exchange Act, 15 U.S.C. §78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

6.     The Court has personal jurisdiction over each of the Defendants because each conducts business in and maintains operations in this District or is an individual who either is present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7.     Venue is proper in this District under § 27 of the Exchange Act, 15 U.S.C. §78aa, as well as pursuant to 28 U.S.C. § 1391, because: (i) the conduct at issue took place and had an effect in this District; (ii) Tangoe maintains its principal place of business in this District and each of the Individual Defendants, and Company officers or directors, either resides in this District or has extensive contacts within this District; (iii) a substantial portion of the transactions and wrongs complained of herein, occurred in this District; (iv) most of the relevant documents pertaining to Plaintiff's claims are stored (electronically and otherwise), and evidence exists, in this District; and (v) defendants have received substantial compensation in this District by doing business here and engaging in numerous activities that had an effect in this District.

## PARTIES

8.     Plaintiff is, and has been at all relevant times, the owner of shares of Tangoe common stock.

9.      Defendant Tangoe is a Delaware Corporation with its headquarters location at 35 Executive Boulevard, Orange, Connecitcut 06477.   Tangoe is a global telecom expense management solutions company that enable companies to reduce telecommunications expenses by managing their mobile and wireline communications lifecycles.   The Company was formerly known as TelecomRFQ, Inc. and changes its name to Tangoe, Inc. in December 2001.   The Company's stock previously traded on the NASDAQ under the symbol "TNGO."   Tangoe was delisted effective at the open of business on Tuesday, March 14, 2017.   The Company's stock current trades over the counter ("OTC").

10.     Defendant James D. Foy ("Foy") has served as the Company's Chief Executive Officer since May 2, 2016 and has served as a member of the Board since March 2014.

11.     Defendant Gerald G. Kokos ("Kokos") serves as the Company's Lead Director, and was appointed as Executive Chairman of the Company on May 2, 2016.   Kokos has served as a member of the Board since Septmeber 2002.

12.     Defendant David M. Coit ("Coit") has served as a member of the Board since August 2006.

13.     Defendant Gary Golding ("Golding") has served as a member of the Board since September 2002.

14.     Defendant Ronald W. Kaiser ("Kaiser") has served as a member of the Board since January 2009.

15.     Defendant Jackie R. Kimzey ("Kimzey") has served as a member of the Board since March 2008.

16.     Defendant Richard S. Pontin ("Pontin") has served as a member of the Board since March 2007.

17.     Defendant Noah J. Walley ("Walley") as served as a member of the Board since July 2008.

18.     Defendants Foy, Kokos, Coit, Golding, Kaiser, Kimzey, Pontin, and Walley, are collectively referred to as "Individual Defendants" and/or the "Board."

## CLASS ACTION ALLEGATIONS

19.     Plaintiff brings this action individually and as a class action on behalf of all holders of Tangoe stock who are being, and will be, harmed by Defendants' actions described herein (the "Class"). Excluded from the Class are Defendants herein and any person, firm, trust, corporation, or other entity related to, controlled by, or affiliated with, any Defendant, including the immediate family members of the Individual Defendant.

20.     This action is properly maintainable as a class action under Federal Rule of Civil Procedure 23.

21.     The Class is so numerous that joinder of all members is impracticable. According to the Recommendation Statement, as of May 10, 2017, there were 39,943,806 shares issued and outstanding. These shares are held by thousands of beneficial holders who are geographically dispersed across the country.

22.     There are questions of law and fact which are common to the Class and which predominate over questions affecting any individual Class member. The common questions include, inter alia, the following:

    a.      whether Defendants have violated Sections 14 and 20 of the Exchange Act in connection with the Proposed Transaction; and

    b.      whether Plaintiff and the other members of the Class would be irreparably harmed were the transactions complained of herein consummated.

23.    Plaintiff's claims are typical of the claims of the other members of the Class and Plaintiff does not have any interests adverse to the Class.

24.    Plaintiff is an adequate representative of the Class, has retained competent counsel experienced in litigation of this nature, and will fairly and adequately protect the interests of the Class.

25.    The prosecution of separate actions by individual members of the Class creates a risk of inconsistent or varying adjudications with respect to individual members of the Class, which could establish incompatible standards of conduct for Defendants.

26.    Plaintiff anticipates that there will be no difficulty in the management of this litigation.   A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

27.    Defendants have acted on grounds generally applicable to the Class with respect to the matters complained of herein, thereby making appropriate the relief sought herein with respect to the Class a whole.

28.    Accordingly, Plaintiff seeks injunctive and other equitable relief on behalf of himself and the Class to prevent the irreparable injury that the Company's stockholders will continue to suffer absent judicial intervention.

## FURTHER SUBSTANTIVE ALLEGATIONS

29.    In November 2015, Vector Capital IV., L.P. and its affiliates ("Vector"), and Clearlake Capital Partners IV GP, L.P. and its affiliates ("Clearlake"), each filed a Schedule 13D with the SEC disclosing their respective ownership in the Company.   Vector and its affiliates beneficially owned approximately 9.9% of the Company's outstanding common stock, and Clearlake owned approximately 8.5% of the Company's outstanding common stock  Clearlake

subsequently filed amendments to its Schedule 13D, ultimately reflecting beneficial ownership of approximately 14.9% of the outstanding Common Stock as of June 23, 2016.

30.     By December of 2015, Vector had made inquiries to the Company regarding its possible consideration of strategic alternatives, the business plan of the Company, and the Company's prospects as an independent entity.   On March 6, 2016, the Company and Vector signed a confidentiality agreement.

31.     After the close of business on March 7, 2016, the Company reported that it would restate its financial statements for the years 2013 and 2014 and the first three quarters of 2015, and had concluded that it made errors in recognizing revenue, primarily relating to non-recurring revenue.  During the course of these efforts, the Company devoted significant internal resources to pursue the restatement, and expended approximately $16 million in costs in 2015 and 2016 for outside assistance on the restatement.

32.     On March 18, 2016, Marlin, together with certain of its other affiliates, filed a Schedule 13D with the SEC disclosing that it and its affiliates beneficially owned 3,001,426, or approximately 7.6%, of the Company's outstanding common stock.

33.     On March 24, 2016, the Company announced that it had received a letter from NASDAQ stating that the Company was not in compliance with its listing requirements because the Company had failed to timely file all required periodic financial reports with the SEC due to the restatement.

34.     On June 24, 2016, Marlin and its affiliates filed amendment number 1 to their Schedule 13D with the SEC disclosing beneficial ownership of 4,094,599, or approximately 10.4%, of the outstanding shares of Common Stock.

35.    Over the next five months, the Company had preliminary discussions with several parties regarding potential investment in the Company and/or acquisition of the Company. Those parties included Vector, Clearlake, "Sponsor 1," "Sponsor 2," "Sponsor 3," "Sponsor 4," "Sponsor 5, " and "Sponsor 6."

36.    As of December 14, 2016, Marlin had verbally proposed a transaction at $7.00 per share and Clearlake and Vector had verbally proposed a joint transaction at a range of $7.00 to $7.50 per share, and that each indicated a willingness, if requested, to submit a written indication of interest to that effect, contingent on continued diligence and further review of the ongoing results of operations, including technical diligence related to the new product platform under development.

37.    On December 16, 2016, in response to inquiries from Stifel, Nicolaus & Company, Inc. ("Stifel"), the Company's financial advisor, Marlin indicated it could complete diligence and be prepared to execute a definitive acquisition agreement in five to six weeks, while Clearlake and Vector indicated a period of four to five weeks. Each requested that the Company enter into an exclusivity agreement.

38.     On December 29, 2016, the Company received a revised letter from Marlin substantially similar to the letter of December 27, 2016, but confirming that neither continued listing of the Common Stock on NASDAQ nor audited financial statements would be a closing condition. On the same day, Marlin and its affiliates filed amendment number 2 to their Schedule 13D with the SEC disclosing, amongst other things, their preliminary non-binding interest in acquiring all of the outstanding common stock, through a tender offer or otherwise, for $7.50 per share in cash, subject to, among other things, reaching agreement on all material terms.

39.     On January 2, 2017, the Company received a letter from Clearlake and Vector indicating an interest in a joint acquisition of the Company at a price of $7.00 per share.

40.     On January 3, 2017, the Company issued a press release confirming receipt of the proposal from Marlin and the joint proposal from Clearlake and Vector, that the Company had notified NASDAQ that it was unlikely to complete the restatement by the March 10, 2017 deadline, that the Board would carefully evaluate the proposals and was focused on maximizing stockholder value, and that the Company had retained Stifel as financial advisor to assist in these efforts.

41.     On January 8, 2017, representatives of another financial sponsor, Sponsor 7, contacted Foy about its potential interest in a transaction. Also on January 9, 2017 representatives of another financial sponsor, th Sponsor 8, contacted representatives of Stifel about its potential interest in a transaction.

42.     As part of these discussions, the Company entered into confidentiality agreements with Clearlake, Vector, Sponsor 3, and Sponsor 8 (discussed later herein).

43.     On February 27, 2017, the Company received a letter from Marlin offering an acquisition of the Company through a cash tender offer at a price of $6.50 per share, setting forth the proposed equity and debt sources to be used and the remaining diligence to be performed, including a technical review of the new product platform and contacts with certain customers, as well as a 30-day go shop period.

44.     Later on March 1, 2017, the Company received a letter from Clearlake and Vector indicating they were not prepared to make an acquisition proposal at that time, and requesting a period of up to three weeks to perform additional diligence with respect to a potential proposal.

45.    On March 9, 2017, the Company received a letter from Marlin proposing an acquisition of the Company through a cash tender offer at a price of $6.50 per share and substantially similar to its letter dated February 27, 2017, except with respect to a slightly revised proposal concerning appraisal rights.

46.    On March 28, 2017, Messrs. Foy and Kokos spoke by telephone with representatives of Marlin regarding possible ways to integrate the Company's management team with Marlin's.

47.    On April 28, 2017, the Company and Marlin announced entry into the Merger Agreement.

**The Recommendation Statement Omits Material Information**

48.    On May 12, 2017, Tangoe filed the Recommendation Statement with the SEC in support of the Tender Offer commenced by Marlin that same day.  As alleged below and elsewhere herein, the Recommendation Statement contains material misrepresentations and omissions of fact that must be cured to allow Tangoe's stockholders to render an informed decision with respect to the Tender Offer.

49.    The Recommendation Statements omits material information regarding (i) the sale process leading up to the Tender Offer; (ii) potential conflicts of interest by Tangoe's management and directors; and (iii) the valuation analyses prepared by Tangoe's financial advisor, Stifel.

50.    With regard to the omission of material information relating to the sale process leading up to the Proposed Transaction, the Recommendation Statement states at that the Company entered into several confidentiality agreements, including those with Clearlake, Vector, Sponsor 3, and Sponsor 8.  Descriptions concerning the material terms of these confidentiality agreements, however, are absent from the Recommendation Statement, including whether or not these confidentiality agreements contained standstill provisions, and if so, whether the standstill

provisions had "don't-ask-don't-waive" provisions and/or sunset provisions, or whether the counterparties could seek a waiver of such standstills to make an unsolicited offer to acquire the Company.  Given that the confidentiality agreement signed by Marlin contained a standstill provision, which typically would bar unsolicited offers, it is likely that these agreements did also.

51.    If these confidentiality agreements entered into with Clearlake, Vector, Sponsor 3, and Sponsor 8 contained standstills, these parties were likely prohibited from coming forward during the go-shop with a topping bid, and may continue to be precluded from doing so thereafter. And, pursuant to the Merger Agreement, the Company is explicitly forbidden to waive any standstill provisions.

52.    The omission of the details regarding these confidentiality agreements in the Recommendation Statement renders it materially misleading because it gives the impression that the confidentiality agreement counterparties who had entered into negotiations with the Company prior to its signing of the Merger Agreement have the ability to come forward with a topping bid, when they may, in fact, be contractually prohibited from doing so.  Thus, the omission of this information renders all references to the confidentiality agreements in the Recommendation Statement materially false and misleading.

53.    With regard to the potential conflicts of interest faced by Tangoe's management, the Recommendation Statement fails to disclose the timing and nature of all communications regarding future employment of Tangoe's management, including who participated in all such communications. As detailed in the press release announcing the Proposed Transaction, after the closing, "[t]he new company would operate under the Tangoe brand with Jim Foy continuing to serve as CEO."  The fact that members of Tango management will stay on is indicated later in that same press release, when Peter Chung, a principal at Marlin, states: "We look forward to working

closely with the Tango and Asentinel teams to develop world-class solutions and drive customer success."

54.     Disclosure of all communications regarding post-transaction employment during the negotiation of the underlying transaction is necessary for stockholders to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders. Here, with respect to the section of the Recommendation Statement titled "Arrangements with Current Executive Officers and Directors of the Company" there is no information relating to the timing and nature of all communications regarding future employment of Tangoe's management, thereby rendering this section misleading on account of the material omission.

55.     Instead, the Recommendation Statement merely states that, on March 28, 2017, Messrs. Foy and Kokos spoke by telephone with representatives of Marlin regarding possible ways to integrate the Company's management team with Marlin's.  It does not state if this was the first overture regarding management retention, nor does it state when the first such overture was made. Without the information as to when all such communications took place, the stockholders are being materially misled into believing that the first such communication took place on March 28, 2017, when it is likely that such communications took place as early as December 2016.

56.     With respect to Stifel's *Selected Company Analysis* the Recommendation Statement fails to disclose the individual multiples for the companies observed in the analysis.

57.     With respect to Stifel's *Selected Transactions Analysis*, the Recommendation Statement fails to disclose the individual multiples for the transactions observed in the analysis.

58.     When a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed. Here, the Defendants' failure to provide full and accurate disclosures regarding the analyses underpinning Stifel's fairness opinion renders the fairness opinion and Stifel's conclusion that "in the transaction pursuant to the Merger Agreement was fair to such holders of shares from a financial point of view" misleading.  Specifically, failure to disclose the company-specific and transaction-specific multiples with regard to these analyses tends to allow stockholders to be misled by the selection of inapplicable comparables, or by undisclosed outliers which may distort the results of the analysis.

59.     The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to Tangoe's stockholders. Accordingly, based on the foregoing disclosure deficiencies in the Recommendation Statement, Plaintiff seeks injunctive and other equitable relief to prevent the irreparable injury that Company stockholders will suffer, absent judicial intervention, if Tangoe's stockholders are required to decide whether or not to tender their shares without the above-referenced material misstatements and omissions being remedied.

## CLAIMS FOR RELIEF

### COUNT I
### Claims Against All Defendants for Violations of § 14(e) of the
### Securities Exchange Act of 1934

64.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

65.     Section 14(e) of the Exchange Act provides that it is unlawful "for any person to make any untrue statement of a material fact or omit to state any material fact necessary

in order to make the statements made, in the light of the circumstances under which they are made, not misleading…" 15 U.S.C. § 78n(e).

66.     As discussed above, Tangoe filed and delivered the Recommendation Statement to its stockholders, which defendants knew or recklessly disregarded contained material omissions and misstatements as set forth above.

67.     Defendants are violating § 14(e) of the Exchange Act by issuing the Recommendation Statement in which they made untrue statements of material facts or failed to state all material facts necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading, in connection with the tender offer commenced in conjunction with the Proposed Transaction.   Defendants knew or recklessly disregarded that the Recommendation Statement failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

68.     The Recommendation Statement was prepared, reviewed and/or disseminated by defendants. It misrepresented and/or omitted material facts, including material information about the consideration offered to stockholders via the tender offer, the intrinsic value of the Company, and potential conflicts of interest faced by certain Individual Defendants.

69.     In so doing, defendants made untrue statements of material facts and omitted material facts necessary to make the statements that were made not misleading in violation of § 14(e) of the Exchange Act.  By virtue of their positions within the Company and/or roles in the process and in the preparation of the Recommendation Statement, defendants were aware of this information and their obligation to disclose this information in the Recommendation Statement.

70.     The omissions and incomplete and misleading statements in the Recommendation Statement are material in that a reasonable stockholder would consider them important in deciding whether to tender their shares or seek appraisal.  In addition, a

reasonable investor would view the information identified above which has been omitted from the Recommendation Statement as altering the "total mix" of information made available to stockholders.

71.     Defendants knowingly or with deliberate recklessness omitted the material information identified above from the Recommendation Statement, causing certain statements therein to be materially incomplete and therefore misleading.  Indeed, while defendants undoubtedly had access to and/or reviewed the omitted material information in connection with approving the Proposed Transaction, they allowed it to be omitted from the Recommendation Statement, rendering certain portions of the Recommendation Statement materially incomplete and therefore misleading.

72.     The misrepresentations and omissions in the Recommendation Statement are material to Plaintiff, and Plaintiff will be deprived of their entitlement to make a fully informed decision if such misrepresentations and omissions are not corrected prior to the expiration of the tender offer.

<u>**COUNT II**</u>
**Claims Against All Defendants for Violations of § 14(d)(4) of the**
**Securities Exchange Act of 1934 and SEC Rule 14d-9 (17 C.F.R. § 240.14d-9)**

73.     Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

74.     Defendants have caused the Recommendation Statement to be issued with the intention of soliciting stockholder support of the Proposed Transaction.

75.     Section 14(d)(4) of the Exchange Act and SEC Rule 14d-9 promulgated thereunder require full and complete disclosure in connection with tender offers.

76.     The Recommendation Statement violates § 14(d)(4) and Rule 14d-9 because it omits material facts, including those set forth above, which render the Recommendation Statement false and/or misleading.

77.     Defendants knowingly or with deliberate recklessness omitted the material information identified above from the Recommendation Statement, causing certain statements therein to be materially incomplete and therefore misleading.  Indeed, while defendants undoubtedly had access to and/or reviewed the omitted material information in connection with approving the Proposed Transaction, they allowed it to be omitted from the Recommendation Statement, rendering certain portions of the Recommendation Statement materially incomplete and therefore misleading.

78.     The misrepresentations and omissions in the Recommendation Statement are material to Plaintiff, and Plaintiff will be deprived of their entitlement to make a fully informed decision if such misrepresentations and omissions are not corrected prior to the expiration of the tender offer.

79.     The misrepresentations and omissions in the Recommendation Statement are material to Plaintiff, and Plaintiff will be deprived of their entitlement to make a fully informed decision if such misrepresentations and omissions are not corrected prior to the expiration of the tender offer.

## COUNT III
### Against the Individual Defendants for
### Violations of § 20(a) of the 1934 Act

80.     Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

81.     The Individual Defendants acted as controlling persons of Tangoe within the meaning of Section 20(a) of the 1934 Act as alleged herein.  By virtue of their positions as officers and/or directors of Tangoe and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Recommendation Statement, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that plaintiff contends are false and misleading.

16

82.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Recommendation Statement alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

83.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same.  The Recommendation Statement contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction.  They were thus directly involved in the making of the Recommendation Statement.

84.     By virtue of the foregoing, the Individual Defendants violated Section 20(a) of the 1934 Act.

85.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(d) of the 1934 Act and Rule 14d-9, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the 1934 Act.  As a direct and proximate result of defendants' conduct, Plaintiff is threatened with irreparable harm.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against defendants jointly and severally, as follows:

(A)     declaring this action to be a class action and certifying Plaintiff as the Class representatives and his counsel as Class counsel;

(B)     declaring that the Recommendation Statement is materially false or misleading;

(C)     enjoining, preliminarily and permanently, the Proposed Transaction;

(D)     in the event that the transaction is consummated before the entry of this Court's final judgment, rescinding it or awarding Plaintiff and the Class rescissory damages;

(E)     directing that Defendants account to Plaintiff and the other members of the Class for all damages caused by them and account for all profits and any special benefits obtained as a result of their breaches of their fiduciary duties.

(F)     awarding Plaintiff the costs of this action, including a reasonable allowance for the fees and expenses of Plaintiff's attorneys and experts; and

(G)     granting Plaintiff and the other members of the Class such further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.


Dated:  May 18, 2017                    **LEVI & KORSINSKY LLP**

                                        */s/ Shannon L. Hopkins*
                                        Shannon L. Hopkins
                                        733 Summer Street, Suite 304
                                        Stamford, CT 06901
                                        Telephone: (203) 992-4523
                                        Facsimile: (212) 363-7171
                                        Email: shopkins@zlk.com


                                        Donald J. Enright (to be admitted *pro hac vice*)
                                        Elizabeth K. Tripodi (to be admitted *pro hac vice*)
                                        1101 30th Street, N.W., Suite 115
                                        Washington, D.C. 20007
                                        Telephone: (202) 524-4290
                                        Facsimile: (202) 333-2121
                                        Email: denright@zlk.com
                                                etripodi@zlk.com

## CERTIFICATION OF NAMED PLAINTIFF
## PURSUANT TO FEDERAL SECURITIES LAWS

I, Caleb McArthur, declare as to the claims asserted under the federal securities laws, as follows:

1.  I have reviewed this Complaint and authorized its filing;

2.  I did not purchase the securities that are the subject of this Complaint at the direction of Plaintiffs' counsel or in order to participate in this litigation;

3.  I am willing to serve as a representative party on behalf of the Class, including providing testimony at deposition and trial, if necessary;

4.  I conducted the following transactions in securities which are the subject of the Complaint during the Class Period:

| Purchase Date | Stock Symbol | Shares Transacted | Price Per Share |
|---|---|---|---|
| 08/12/2013 | TNGO | 908 | $18.20 |
|  |  |  |  |
|  |  |  |  |

5.  During the three years prior to the date of this Certification, I have not participated, nor have I sought to participate, as a representative in any class action suit in the United States District Courts under the federal securities laws.

6.  I have not received, been promised or offered, and will not accept, any form of compensation, directly or indirectly, for prosecuting or serving as a representative party in this class action, except for: (i) such damages or other relief as the Court may award to me as my *pro rata* share of any recovery or judgment; (ii) such reasonable fees, costs or other payments as the Court expressly approves to be paid to or on behalf of me; *or* (iii) reimbursement, paid by my attorneys, of actual or reasonable out-of-pocket expenditures incurred directly in connection with the prosecution of this action.

I declare, under penalties of perjury, that the foregoing is true and correct. Executed this 18 day of May , 2017, at New York , NY .
                                            [City]              [State]

                                            By:    Caleb McArthur